UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| KENSLEY SYLVAIN,<br><br>Petitioner,<br><br>v.<br><br>BRISON SWEARINGEN,<br>FIELD OFFICE DIRECTOR,<br>DAVID J. VENTURELLA,<br>MARKWAYNE MULLIN,<br>TODD BLANCHE,<br><br>Respondents. | ) | No. 2:26-cv-00593-JRS-MKK |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Kensley Sylvain's petition for a writ of habeas corpus seeks release from the Clay County Jail, where he is detained on behalf of U.S. immigration authorities. For the following reasons, his petition is denied.

## I. Facts

Mr. Sylvain is a Hatian citizen and national. Dkt. 1 at 7. He entered the United States without inspection in 2021. Dkt. 8-1 at 5. Soon after crossing the border he was encountered by U.S. Border Patrol agents, arrested, and processed for expedited removal. *Id.* at 5, 13-15. On August 27, 2021, an Immigration Judge ordered Mr. Sylvain removed. *Id.* at 16.

On September 2, 2021, Mr. Sylvain was released on parole, which subsequently expired. Dkt. 8 at 1, 2; *see* dkt. 1 at 12. On January 31, 2025, Mr. Sylvain was granted Temporary Protected Status, which expired on February 3, 2026. Dkt. 8-1 at 18; *see* dkt 1 at 12. On August 17, 2026, Mr. Sylvain was arrested pursuant to an administrative warrant for arrest and warrant of removal. Dkt. 8-1 at 1, 3, 5.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Sylvain argues that his detention violates the parole regulations and the Fifth Amendment's due process clause. As a threshold matter, he also argues that the government did not lawfully revoke his parole.

### A. Legality of Detention

Mr. Sylvain also asserts a procedural claim, arguing that the Due Process Clause entitles him to notice and an opportunity to challenge his detention (on grounds that lack of process fails to protect his interest in continued physical liberty). Dkt. 1 at 17-23.

Because Mr. Sylvain is subject to a final removal order, his detention is governed by 8 U.S.C. § 1231. The statute applies two detention schemes—one compulsory and one discretionary—to two distinct time periods.

Section 1231(a)(1) establishes a 90-day "removal period." For purposes of this case, the removal period begins when the noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(a)(1)(A) directs that "the Attorney General shall remove" a noncitizen who has been ordered removed during the 90-day removal period. To facilitate that removal, § 1231(a)(2)(A) directs that the Attorney General "shall detain" the noncitizen during the removal period. If the Attorney General does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

At face value, the text of § 1231(a)(6) authorizes the government to detain noncitizens who are subject to removal orders in perpetuity. But a "statute permitting indefinite detention of an alien

would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This is because civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

The *Zadvydas* Court reconciled § 1231(a)(6) with the Fifth Amendment by interpreting § 1231(a)(6) as containing an implicit, constitutional limit on post-removal period detention authority. The statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Likewise, if detention "exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700.

To aid courts in determining when removal is reasonably foreseeable, *Zadvydas* recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Mr. Sylvain's continued detention is lawful under § 1231 as interpreted by *Zadvydas*. He has been detained for roughly three months, so his detention is well within the six-month period of presumptive reasonableness. There is no basis in the record for the Court to find that Mr. Sylvain is not significantly likely to be removed in the reasonably foreseeable future.

To the extent Mr. Sylvain asserts that his detention violates the due process clause, it fails for similar reasons. Practically, a § 1231 detainee's statutory and constitutional claims merge into one because "the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test

fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("Because the *Zadvydas* Court set forth this 'reasonable foreseeability' test in order to prevent § 241 from violating the Due Process Clause, we may safely assume that this test articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights. Under *Zadvydas*, then, detention of an alien 'once removal is no longer reasonably foreseeable' not only violates § 241, it also violates the Due Process Clause."). In short, there is no need for a separate due process analysis.

**B. Parole Expiration**

Immigration regulations authorize the government to terminate an alien's humanitarian parole upon written notice and "upon accomplishment of the purpose for which parole was authorized or when in the opinion of" a designated official, "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States . . . ." 8 C.F.R. § 212.5(e)(2)(i). A grant of parole terminates automatically, without written notice, (a) when the noncitizen departs the United States, or (b) "if not departed, at the expiration of the time for which parole was authorized." *Id.* Respondents answer that Mr. Sylvain's parole terminated automatically upon expiration.

In reply, Mr. Sylvain does not argue that his parole has not expired. Rather, he "challenges the procedure—or absence of procedure—by which the Government exercised discretionary civil-detention authority." Dkt. 10 at 3. Mr. Sylvain asserts that the government was obliged to follow the regulations found at 8 C.F.R. § 241.4(l) before re-detaining him. The Court finds no basis for determining that Mr. Sylvain's detention was unlawful. His parole and TPS, rather than being revoked, both expired automatically, and he was served with an administrative warrant of removal

that informed him of the basis for his detention. Dkt. 8-1 at 1. Moreover, the regulations state that the government "will not conduct a custody review under these procedures when the Service notifies the alien that it is ready to execute an order of removal." 8 C.F.R. § 241.4(g)(4). As the Court discussed above, there is no indication in the record that the government is not prepared to do so.

## III. Conclusion

Mr. Sylvain's petition for a writ of habeas corpus is **denied**. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 11/16/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel of record